### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RCIO

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Criminal No. 17-580 (JAG)** |
| | ) | |
| **Robert Rivera- Pastrana** | ) | |
| **Defendant** | ) | |
| | ) | |

### MOTION TO SUPPRESS EVIDENCE

**TO THE HONORABLE COURT:**

**COMES NOW** the undersigned attorney on behalf of defendant, *Robert Rivera-Pastrana* and very respectfully states and prays as follows:

Defendant has a constitutional right and the state is obliged to grant the accused a fair trial, not perfect, but impartial and free of any sabotage. As a result, any evidence unlawfully obtained by the Government, infect the integrity of further proceedings, resulting in a denial of the fundamental rights that assists all the individuals.

### I. INTRODUCTION & PROCEDURAL BACKGROUND

On October 29th , 2017, defendant Rivera-Pastrana was arrested. On October 30th, 2017 a complaint was filed for alleged violation to the federal code. The complaint charged Mr. Rivera of the following offenses: Title 18, United States Code, 922(g)(1), Title 18, United States Code, 922(o) and Title 18, United States Code, 922(g)(3). (*see* Docket No.1).

On November 9th, 2017, a Grand Jury returned a One (1) Count and Forfeiture Indictment, charging Mr. Rivera for alleged violation to Title 18, United States Code, 922(g)(1)(a); *Prohibited Person in Possession of a Firearm: Convicted Felon* and for a violation to Title 18, United States Code,  922(3); *Prohibited Person in Possession of a Firearm: Drug User: Unlawful user of a Controlled Substance,* as defined in Title 21, United States Code, 802 and Title 18, United States Code, (o); *Illegal Possession of a Machine Gun.* (*see* Docket No.14).

On November 13th, 2017, the Detention Hearing was held. Bail was denied and defendant was *ordered* detained pending trial (*see* Docket No. 16). On February 2nd, 2018, the defense filed a Motion for De Novo Hearing and on February 16th, 2018 the Government filed its Motion in Opposition. filed (see Docket No. 28 &34). On March 9th, 2018, the Motion for De Novo Hearing filed by the defense was denied. (*see* Docket No. 44).

The detention of Mr. Rivera- Pastrana was conducted by Puerto Rico Police Department (PRPD) San Juan Drug Unit (SJDU) Agent Joseph Pita-Lamboy (Pita Lamboy). After being detained, defendant's person and vehicle were searched without a search warrant or apparent traffic violation. During the detention a firearm, controlled substances and paraphernalia were seized from the inside of Mr. Rivera's car. An Affidavit in Support of the Criminal Complaint contains a **brief and vague description** of the alleged surveillance, events that led to the detention, details of the arrest of Mr. Rivera and seizure of evidence.

## II. STATEMENT OF FACTS[1]

On October 29th, 2017, Puerto Rico Police Department (PRPD) San Juan Drug Unit (SJDU) Agents, conducted an operational plan of surveillance at Santurce, Puerto Rico. At approximately 5:30AM, during the surveillance, PRPD Agent Pita observed *several males* departing Tabacco & Ron Lounge located in Santurce. The PRPD agent observed a young male wearing a blue men's shirt and jeans, later identified as Mr. Rivera as he reached the *parking lot area to leave the place.* The PRPD agent observed Mr. Rivera walk to a vehicle, a *black Lexus model GX470, 2004,plate IRH-807* take a *black firearm from his waist, place it inside a black Lexus and depart the area*.

PRPD/SJDU agent, *started to follow Mr. Rivera*, who was in the black Lexus, while *awaiting for police aid and assistance*. Moments later, PRPD, SJDU Agents c*onducted a traffic stop of the black Lexus at Kennedy Avenue*. During the intervention, PRPD Agent Pina observed that the black Lexus had the *windows down* and observed, *__in plain view,__* Mr. Rivera, trying to *place a black firearm inside a hidden compartment*.

---

[1] Statement of facts according to the Affidavit in support of the *Criminal Complaint* (see Docket No.1).

Mr. Rivera was placed under arrest. During the routine safety check of his person, inside his pockets, an aluminum cylinder, containing **Percocet**, US currency and a black iPhone. Mr. Rivera, after a detention and a search of his person and vehicle was conducted, was charged for a violation to Title 18, United States Code, Section 922 (g)(1)(a) and Title 18, United States Code, Section 922 (o). According to the *Affidavit in Support of the Criminal Complaint,* on October 29th, 2017 at approximately 2:30AM., Puerto Rico Police Department (PRPD) San Juan Drug Unit (SJDU) agents conducted an operational plan of surveillance at Santurce, PR, area.

## II. Legal Authority

**A. Fourth Amendment & Fourth Amendment Protection**

The Fourth Amendment of the United States Constitution prays as follows:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized . U.S. Const. Amend IV.

The Fourth Amendment was written into the Constitution because "[s]ad experience had taught [the colonialists] that the right to search and seizure should not be left to the mere discretion of the police, but should as a matter of principle be subjected to the requirement of previous judicial sanction wherever possible." *Trupiano v. United States, 334 U.S. 699 (1948).* Therefore, the Constitution of the United States protects the persons against unreasonable searches and seizures, and requires probable cause to obtain a warrant, before the execution of a search and seizure.

The constitutional protection extends to the persons, houses, papers and effects. A search takes place when the expectation of privacy that the society considers reasonable is violated. *Illinois v. Andreas, 463 U.S. 765 (1983); Smith v. Maryland, 442 U.S. 735 (1979).* A seizure of property takes place when there is a considerable interference with an individual's possessory interest in the property. *U.S. v. Place, 462 U.S. 696 (1983).*

Seizure involves meaningful interference, however brief, with the individual's freedom of movement. *Michigan v. Summers, 452 U.S. 692 (1981); Terry v. Ohio, 392 U.S. 1 (1968).* **Under the "Exclusionary Rule" evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal**

**search and seizure (**emphasis supplied). *Mapp v. Ohio, 367 U.S. 643 (1961).*

The "fruits of such illegal conduct" are also excluded. *Wong Sun v. U.S., 371 U.S. 471 (1963).* Whether a particular search is reasonable, it is judged by balancing the intrusion against the promotion of legitimate governmental interest. *Skinner v. Railway Labor Executives Assn., 489 U.S. 602 (1989); Delaware v. Prouse, 440 U.S. 648 (1979).* Under the "Exclusionary Rule" evidence obtained in violation of the Fourth Amendment cannot be used in a criminal proceeding against the victim of the illegal search and seizure. *Mapp v. Ohio, supra.* The "fruits of such illegal conduct" are also excluded. *Wong Sun v. U.S., 371 U.S. 471 (1963).* The measure of the constitutionality of government search is reasonableness. *Vernia School District 47 v. Acton, 515 US 646 (1995).*

Reasonableness generally requires a search warrant. But a warrant is not required to establish reasonableness of all government searches. **There is a preference for search warrant, with limited exceptions** (emphasis supplied). *New Jersey v. T.L.O., 469 U.S. 325 (1985).* A warrant may only be issued after a neutral magistrate determines that probable cause exists to support the proposed search.

The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences, which reasonable men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often- competitive enterprise of ferreting out crime. Johnson v. United States, 362 U.S. 257 (1960).

Although the reviewing Court will pay substantial deference to judicial determinations of probable cause, the Court must still insist that the magistrate perform his 'neutral and detached' function and not serve merely as a rubber stamp for the police. Aguilar v. State of Texas, 378 U.S. 108 (1964). Moreover, a search warrant requirement seeks to guarantee that any searches intruding upon an individual's privacy must be justified by probable cause as determined by a neutral and detached magistrate. United States v. Heldt, 668 F.2d 1238 (C.A.D.C. 1981).

**B. Probable Cause**

The Court must consider whether, "[i]n light of the totality of circumstances," the arrest [of Mr. Rivera] was supported by probable cause". *See United States v. Torres-Maldonado, 14 F.3d 95, 105 (1st Cir. 1994) (quoting United States v. Uricoechea-Casallas, 946 F.2d 162 (1st Cir. 1991); see also United States v. Reyes, 225 F.3d 71, 75 (1st Cir. 2000).* The government "[b]ears the burden of establishing that, at the time of the arrest, the facts and circumstances known to the . . . officers were sufficient to warrant a reasonable person in believing that the individual had committed or was committing a crime". *Reyes, 225 F.3d at 75.*

The government need not present evidence sufficient to convict Defendant; what is required is "[m]erely enough to warrant a reasonable belief that he was engaging in criminal activity". *Id.; see also Torres-Maldonado, 14 F.3d at 105*. Now well, from the facts establishing probable cause as narrated in the affidavit in support of criminal complaint revealed, that agent Olga Tapia was unaware of the events that led up to the surveillance at the 'Tabaco & Ron', moreover, the reason for the traffic stop wasn't mentioned, as consequence, the knowledge of facts supporting probable cause cannot be attributed to agent Tapia under the collective knowledge doctrine. *See, e.g., United States v. Barnes, 506 F.3d 58, 63 (1st Cir. 2007*) ("[R]easonable suspicion can be attributed to the officer conducting a search if he acts in accordance with the direction of another officer who has reasonable suspicion.").

Crucial to the probable cause inquiry is whether PRPD agent Pina alerted to the presence of a firearm during the traffic stop, prior to Mr. Rivera arrest. The following is an excerpt of a timeline of events, based upon the affidavit in support of criminal complaint, provided by the government:

2:30(appx) PRPD/SJDU Agents, conducted an operational plan of surveillance at Santurce, Puerto Rico.

5:30(appx) PRPD Agent Pita observed several males departing Tabacco & Ron Lounge located in Santurce.

5:30(appx) The PRPD agent observed an unidentified male walk to a vehicle, a black Lexus model GX470,2004, plate IRH-807, **take a black firearm from his waist, place it inside a black Lexus** and depart the area

(unknown hour) PRPD/SJDU agent, started to follow the black Lexus, <u>while awaiting for police aid and assistance</u>.

(unknown hour) Moments later, PRPD SJDU Agents *conducted a traffic stop of the black Lexus at Kennedy Avenue*.

(unknown hour) During the intervention, PRPD agent Pina observed that the black Lexus had the windows down and *observed, in plain view,* **Mr. Rivera trying to place a black firearm inside a hidden compartment.**

Assuming that this timeline represents a realistic assessment of what occurred, in the light most favorable to the government, the testimony of the PRPD officers as stated in agent Tapia affidavit is self-contradictory. First of all, PRPD agent alleged that he observed an unidentified male **"[t]ake a black firearm from his waist [and] place it inside a black Lexus"**, however, a few moments later, PRPD agent alleged that he **"observed [again] Mr. Rivera plac[ing] a black firearm in a hidden compartment".** Now well, which is the truthful statement regarding the moment in which the PRPD agent allegedly observed Mr. Rivera place a firearm inside the car?

Considering the government's burden, the Court cannot find that the alleged facts and circumstances known to agent Tapia, as narrated by PRPD agents, are enough to sustain the burden of government to show probable cause at the source in collective knowledge doctrine situations. Accordingly, the Court must determine whether, the facts and circumstances known to agent Tapia, in light of the totality of circumstances are sufficient to sustain the indictment of Mr. Rivera.

The government cannot employ a "divide-and-conquer approach" in its probable cause assessment, see *United States v. Ramos, 629 F.3d 60, 65-66 (1st Cir. 2010)*, and it does not do so here. Yet, the sum of what was reasonably known to agent Tapia, based on what they personally observed and the inferences she can drew from PRPD agents statement, is not enough to justify probable cause.

The statement's provided under oath by agent Tapia Nieves, which were essential for the finding of probable cause and issuance of the Complaint, shall be thoroughly discussed and challenged. It will be clearly demonstrated that the statements provided by her are inaccurate and inconsistent with the facts as narrated by PRPD agents. Moreover,

Agent Tapia made material omissions. As consequence, the actions of Agent Tapia led to an erroneous determination of probable cause.

"Uncontrolled search and seizure is one of the first and most effective weapons in the arsenal of every arbitrary government". *Brenninger v. U.S. 338 US 16*. The Fourth Amendment of the Constitution of the United States protects the persons against unreasonable searches and seizures, and requires probable cause to obtain a warrant, before the execution of a search and seizure. The constitutional protection extends to the persons, houses, papers and effects. A search takes place when the expectation of privacy that the society considers reasonable is violated. *Illinois v. Andreas, 463 U.S. 765 (1983); Smith v. Maryland, 442 U.S. 735 749-741 (1979)*.

A person seeking to exclude evidence allegedly taken in violation of the Fourth Amendment must have standing to challenge the illegal conduct that led to the discovery of the evidence. "To say that a party lacks Fourth Amendment standing is to say that his reasonable expectation of privacy has not been infringed. It is with this understanding that [courts] use "standing" as a short term." *United States v. Taketa, 923 F.2d 665, 669-670 (9th Cir. 1991).* To establish standing, the Defendant bears the burden of proving that he has a reasonable expectation of privacy in the place searched or the item seized. *United States v. Salvucci, 448 U.S.83 (1980); United States v. Garcia-Robeledo, 488 F.Supp 50 U.S.D.C. P.R. 2007)*; *United States v. Caymen, 404 F.3d 1196 (9th Cir. 2005).* An individual has a reasonable expectation of privacy if he can demonstrate a subjective expectation that his activities would be private and he can show his expectation was one that society is prepared to recognize as reasonable. *United States v. Sanchez, 943 F.2d 110 (1st Cir. 1991). See also, California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed 2d 30 (1988); United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988).*

A seizure of property takes place when there is a considerable interference with an individual's possessory interest in the property. *U.S. v. Place, 462 U.S. 696 (1983).* Seizure involves meaningful interference, however brief, with the individual's freedom of movement. *Michigan v. Summers, 452 U.S. 692, 696 (1981); Terry v. Ohio, 392 U.S. 1, 16 (1968).* Now, well, the measure of the constitutionality of government search is reasonableness. *Vernia School District 47 v. Acton, 515 US 646, 115 S. Ct. 2386 (1995).* Whether a particular search is reasonable, it is judged by balancing the intrusion against

the promotion of legitimate governmental interest. *Skinner v. Railway Labor Executives Assn., 489 U.S. 602, 619 (1989); Delaware v. Prouse, 440 U.S. 648, 654 (1979).* To receive the protection of the Fourth Amendment, expectation of privacy must be one society is able to recognize. *Kats v. U.S., 389 U.S. 347, 360 (1967).*

There are three principles to guide the inquiry of whether a person has a legitimate expectation of privacy: First: the Fourth Amendment protects people, not places. The question is not whether a particular area is somehow private in the abstract, but whether a person has reasonable expectation of privacy therein. Second: consists of a reasonable expectation that uninvited and unauthorized persons will not intrude in a particular area. A person could admit guests of choosing, or legally obliged to admit specific persons, without sacrificing the right to expect that the space will remain secure against all others. *Stoner v. California, 376 U.S. 483, 489-90 (1964);* Third: expectation of privacy consists of a belief that uninvited person will not intrude in the space. *Kats v. U.S. Supra, at 352.*

**C. Warrantless Search And Seizure And Vehicles**

A court will admit evidence recovered after police misconduct if the prosecution can show that there is no significant relationship between the unlawful conduct and the discovery of the evidence. *Nardone v.U.S., 308 U.S. 338 (1939).* Factors include the time proximity between the misconduct and discovery, whether there are other intervening circumstances, and the purpose and flagrancy of the police misconduct. *Brown v. Illinois, 422 U.S. 590 (1975).* Essentially, an investigatory traffic stop must be reasonably related in scope to the circumstances that justified the interference in the first place. *Terry v. Ohio, 392 U.S. 1 (1968).*Consequently, a traffic stop must be of limited duration lasting no longer then necessary to process the traffic violation, unless there is articulable suspicion of other illegal activity. *Illinois v. Coballes, 543 U.S. 405 (2005).*

A seizure justified only by a police-observed traffic violation becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation. Like a *Terry* stop, the tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's mission, to address the traffic violation that warranted the stop, and attend to related safety concerns. As consequence, addressing the traffic infraction is the purpose of a traffic stop, it may last no longer than is necessary to effectuate that purpose. During a traffic stop, authority for the seizure ends when tasks

tied to the traffic infraction are, or reasonably should have been, completed.

However, beyond determining whether to issue a traffic ticket, an officer's mission includes ordinary inquiries incident to the traffic stop to ensure that vehicles on the road are operated safely and responsibly; typically, such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance.

Now well, given the nature of the stop and the circumstances of the arrest, which included the detention of at least three (3) vehicles and the arrest, transportation to police station, however, released. It is reasonable to understand why Mr. Rivera is under the impression that the police stopped the vehicle upon reasons unrelated to a traffic violation. The intent of the officer was to search the vehicle and look for the firearms based upon factors insufficient to justify even a Terry type stop. A warrantless arrest, as which occurred in this case, requires probable cause, the existence of which must be determined in light of the information possessed by the police at the time of the arrest. *United States v. Diallo, 29 F.3d 23, 25 (1st Cir. 1994).*

**D. Terry Stop or De Facto Arrest**

"There is no scientifically precise formula that enables courts to distinguish between investigatory stops . . . and . . . 'de facto arrests.'" United States v. Zapata, 18 F.3d 971, 975 (1st Cir. 1994); see also United States v. Pontoo, No. 10-2455, 666 F.3d 20 (1st Cir. Dec. 5, 2011) (observing "no bright line that distinguishes" Terry stop from de facto arrest). ***The line between a Terry stop and a de facto arrest is often "drawn by asking whether 'a reasonable man in the suspect's position would have understood his situation' as being an arrest." Pontoo, 666 F.3d 20,*** (quoting United States v. Acosta-Colon, 157 F.3d 9, 14 (1st Cir. 1998). At the same time, "it is an oversimplification to suggest that every case will fall along this continuum." Pontoo, 2666 F.3d 20. **Accordingly, in borderline cases, or in cases where arrest-like features are employed, the Court must "assess the totality of the circumstances" of the encounter in order to conduct a fact-specific inquiry. Morelli v. Webster, 552 F.3d 12, 20 (1st Cir. 2009); see also Pontoo, 666 F.3d 20, 2011**

Factors to consider include: length of the detention; restrictions placed on the individual's movement, by use of handcuffs or other means; use of force, such as forcing the suspect to the ground; information conveyed (or not conveyed) to the detainee, such as

informing the detainee that he or she is under arrest or not under arrest or providing Miranda warnings; the number of law enforcement officers present at the scene; whether weapons were brandished; whether the encounter took place in a neutral location; and whether the suspect was transported to another location during the course of the detention. *See, e.g., Pontoo, 666 F.3d 20, United States v. Fornia-Castillo, 408 F.3d 52, 63 (1st Cir. 2005); Flowers v. Fiore, 359 F.3d 24, 30-32 (1st Cir. 2004).*

No single factor is legally dispositive *Flowers, 359 F.3d at 31-32.* To the extent that any arrest-like features are employed, the government must "identify specific facts or circumstances which could have led the acting law enforcement officers reasonably to believe that the use of such measures was required to effectuate safely the completed investigation." Acosta-Colon, 157 F.3d at 21 (emphasis in original).

The Defendant's detention was an unlawful Terry stop from the time of the initial encounter to the point when PRPD agents drove him to the station at an unknown hour. Moreover, several factors suggested a de facto arrest: the duration was unknown; Defendant was not told he was under arrest until a further moment, the number of PRPD agents that intervened with Mr. Rivera is unknown despite the PRPD agent Pina indicated that he followed the vehicle while waiting for support, it is unknown if PRPD agents brandished weapons; and the encounter took place in an undermined area of the Kennedy avenue.

Defendant was, however, handcuffed almost immediately. Although "traditionally associated with an arrest," United States v. Mohamed, 630 F.3d 1 (1st Cir. 2010), the use of handcuffs "[d]oes not automatically convert the encounter into a de facto arrest". *Acosta-Colon, 157 F.3d at 18.* Nonetheless, the use of handcuffs, "[b]eing one of the most recognizable indicia of a traditional arrest, substantially aggravates the intrusiveness of a putative Terry stop", *Id.* (internal quotation marks and citation omitted),.

In the other hand, none of the factors that suggested a lawful arrest under a Terry stop are present. Factors include whether the suspect was "[u]ncooperative, belligerent, or showed any perceptible inclination to put up resistance or become violent" In this case, the Government has not met its burden. Defendant did not resist his detention — he was cooperative, compliant, and placed into custody without incident.

As mentioned above, the search of the car of Mr. Rivera and his seizure was

effectuated without a warrant, despite that the PRPD agents could do it. Moreover, nowhere on the statement provided by Agent Tapia is there a mention as to a violation to justify the detention of Mr. Rivera. Therefore, the Government has the burden to establish that the intervention was legal, and/or falls within any of the exceptions. *Hayes v. Florida, 470 U.S. 811 (1985).* In the same way, the search and seizure of the car, does not conform to the Fourth Amendment. The actions of the Government are not justified, nor considered reasonable to obtain protection from the limited exceptions accepted by the courts.

*In U.S. v. Ramirez-Rivera*, the First Circuit discussed in depth the Fourth Amendment Protection when dealing with automobiles, and/or moving vehicles:

The expectation of privacy with respect to one's automobile is significantly less than that relating to one's home, such that warrantless examinations of automobiles have been upheld in circumstances in which a search of a home would not. South Dakota v. Opperman, 428 U.S. 364, 367 (1976). However, police still need probable cause to believe that the automobile contains contraband before conducting a warrantless search. Unite States v. Silva, 742 F. 3d 1, 7 (1st Cir. 2014). As with a home-search, in this context probable cause exists when the facts and circumstances as to which police have reasonably trustworthy information are sufficient to warrant a person of reasonable caution in the belief that evidence of a crime will be found".

The Fourth Amendment requires that police officers obtain a warrant based on probable cause for a seizure and search. *Terry v. Ohio, 392 U.S. 1, 20 (1968).* A brief detention is the exception. The officer may conduct a brief investigatory stop when there is a reasonable articulable suspicion that some criminal activity is taking place. *U.S. v. Mendenhall, 446 U.S. 544, 551 (1980)* (Warrantless Fourth Amendment seizure needs an objective and particularized justification) Regarding warrantless searches, in *Johnson v. U.S., 333 U.S. 10, 14 (1948)* the Supreme Court said:

"**Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a warrant will justify the officers in making a search without a warrant would reduce the Fourth Amendment to a nullity and leave the people's home secure only in the discretion of police officers**"(**emphasis supplied**).

In terms of Fourth Amendment, a traffic stop involves the seizure of the driver even when the purpose is limited and the detention quite brief. When the vehicle is stopped, passengers have also been "seized" and have standing to challenge the legality of the seizure. *Brendlin v. California, 551 U.S. 249 (2007); Minnesota v. Carter, 525 U.S. 83 (1998).* Searches conducted without a warrant, are *per se* unreasonable under the

Fourth Amendment, and there are just only a few specific established and well-delineated exceptions. *Arizona v. Gant, 129 S. Ct. 1710 (2009).*

1. **The search and seizure was unreasonable under the Fourth Amendment and any fruits obtained therefrom should be suppressed**

This Court shall conduct an evidentiary hearing to determine the reasonableness of the search on October 29th, 2017. *United States v. Calderone, 77 F.3d 6, 9 (1st Cir. 1996).* In support of this Motion to Suppress, the alleged facts as narrated by the Task Force Agent Olga Tapia in her sworn statement, should be observed under the judicial scrutiny in an evidentiary hearing. **Moreover, the evidence provided by the Government, demonstrates that the search and seizure in the present case was without a doubt and by all means illegal.**

During a lawful search of a private place, law enforcement officers may seize contraband and evidence that are in "plain view". *Coolidge v. New Hampshire, 403 U.S. 443 (1971).* Three conditions must be satisfied:

1.Officers must not have violated the Fourth Amendment when placing at the place where the evidence could be plainly viewed. *Horton v. California, 496 U.S. 128 (1990)*;

**2. Not only the item must be in plain view; the incriminating character must also be immediately apparent (emphasis supplied)**. *see Horton v. California, Supra.*

**3. The officers must be located in a place from which the object could be seen** and must also have a lawful right of access to the object itself. *see Minnesota v. Dickerson, 508 U.S. 366 (1993).*

> "It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, any evidence seized by the police will be in plain view, at least at the moment of seizure. **The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than simply being the normal concomitant of any search, legal or illegal"(emphasis supplied)** *Coolidge v. New Hampshire, 403 U.S. 443 (1971).*

## IV. LEGAL ARGUMENT

Understanding as we do, and as proffered herein that the affidavit provided under oath by Task Force Agent (DEA) Olga Tapia-Nieves, contains inaccurate, incongruent and self-contradictory information and/or statements. The affidavit fails to establish plain view to justify the detention of Mr. Rivera. Moreover, the agent Olga Tapia that issued the affidavit, did not establish plain view argument, in order to conduct the search of Mr. Rivera. In the other hand, the Affidavit in Support, provided by agent Tapia, detailed a series of observations and conclusions realized during the surveillance and traffic stop, which are vague and inaccurate. However, the Magistrate Judge, to which the statement was provided, relied solely and only on said information, factual descriptions and statements made by agent Tapia for the court's finding of probable cause and therefore for the issuance of the Complaint.

On these grounds, defendant Mr. Rivera moves this Honorable Court for the suppression of all evidence seized and search of his person and vehicle on October 29th, 2017; in addition to any statements made by Mr. Rivera during the search of his car pursuant to the plain view allegations, because both the detention and arrest violate the Fourth Amendment[2].

## V. CONCLUSION

Almost a century ago, in *Olmstead V. United States, 277 U.S. 438 (1928)*, Mr. Justice Brandies stated in his dissident opinion that:

> "[o]ur government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means--to declare that the government may commit crimes in order to secure the conviction of a private criminal--would bring terrible retribution. Against that pernicious doctrine this court should resolutely set its face".

---

[2] The right of the people to be secure in their persons, houses, paper and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by Oath or affirmation and particularly describing the place to be searched and the persons or things to be seized. U.S.C.A Const. Amend. IV.

Pursuant to *Calderone, supra,* Mr. Rivera herein has presented to the Court facts sufficiently definite, specific and detailed and non-conjectural, to enable the Court to conclude that a substantial claim is present. Defendant sustains that no basis existed for his traffic stop (detention) and arrest and we strongly belief so. As shown throughout the present motion, there is essential information that is not included, pertinent to establish a plain view argument for probable cause.

Agent Tapia failed to include information that is of essence, such as what was the traffic violation that led to the detention of Mr. Rivera.. If in fact the agents were conducting a surveillance in Santurce, why was Mr. Rivera stopped in Kennedy Avenue? What was the traffic violation? As stated above, agent Tapia fails to mention this, but instead said that upon detention the firearm was right there in plain view, needless to say this is unfathomable.

Thus, the defense is forced to conclude that the information provided under oath by Agent Tapia is misleading, since it omitted essential information. In other words, since the PRPD agents, in total disregard of the law, stopped defendant and searched both him and the car, to see if there was any illegal material that could justify the detention and latter arrest. The Case Law has established that a search and seizure is legal when conducted as a consequence of an Order issued by a judge. However, only under ***exceptional circumstances***, a search and seizure without order can be considered legal. In the instant case what the agent did to Mr. Rivera on October 29th, 2017 ,was illegal by any and all means, since not only was there no Order for search and seizure, but no traffic violation has been mentioned in order to justify the detention of the vehicle. Thus, it is reasonable to conclude that defendant was illegally detained and search under the subterfuge of plain view.

**1. Necessity for a Suppression Hearing**

In order to warrant a suppression hearing, the defendant must demonstrate a specific factual dispute that can be resolved by a hearing. See United States v. Mathurin, 148 F.3d 68 (2d Cir. 1998) (evidentiary hearing not required where defendant failed to make specific factual allegations of illegality) see United States v. Ahmad, 992 F. Supp. 682, 685 (S.D.N.Y. 1998). Mr. Rivera raised a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion in order to require a hearing. United States v.

Pena, 961 F.2d 333, 339 (2d Cir. 1992).

In the instant case, Mr. Rivera raised a "sufficiently definite, specific, detailed, and nonconjectural" factual basis for the motion in order to require a hearing. United States v. Pena, 961 F.2d 333, 339 (2d Cir. 1992). The Constitution, the law and the case law have established that you cannot justify the search, the seizure and/or the arrest of a person under a vague plain view allegation, moreover, a plain view allegation that wasn't observed by the agent that filed the affidavit.

Being the instant case one that violated Mr. Rivera's constitutional rights and in the best interest of justice, all evidence fruit of the illegal search and seizure should be suppressed by this Honorable Court. The government cannot allow the avoiding of rules, laws and standard procedures that are required when intervening with a citizen and/or searching their person or property. Behavior such as the one displayed by the PRPD agents that intervened with Mr. Rivera should not be tolerated

**WHEREFORE**, it is respectfully requested that this Honorable Court take notice of Mr. Rivera's request of suppressing the evidence seized during the search that was executed on May 7th, 2018 forthwith.

**RESPECTFULLY SUBMITTED**, in San Juan, Puerto Rico on this 7th day of April 2018.

**CERTIFICATION**: I hereby certify having filed this motion through the court's CM/ECF filing system, which will notify all parties and counsel of records in this case.

**/S/ Víctor A. Ramos- Rodríguez**
_____

**Víctor A. Ramos- Rodríguez**
USDC –PR: 130202
P.O. Box 9465
Plaza Carolina Sta.
Carolina, PR, 00988
(787) 753-4241
FAX: (787) 756-1212
abogpr@aol.com

**S/ Wilfredo Diaz- Narvaez**
_____

Wilfredo Diaz- Narvaez
USDC- PR215211
P.O. Box 31270
San Juan, PR, 00929-2270
(787) 759-7269
attwdn@hotmail.com
Fax (787) 753-4598